Taylor *v.* Taylor.

WM. TAYLOR *v.* W. C. TAYLOR and WIFE.

1. HUSBAND AND WIFE. *Wife's real estate. Rents and profits.* A wife may maintain an action of replevin for corn raised upon land inherited by her, which had been levied upon for her husband's debts, the land being inherited and the debt contracted prior to the act of 1879, ch. 36, and the corn being raised subsequent to the passage of said act. The rents and profits of wife's land cannot be subjected to husband's debts.

·2. CONSTITUTIONAL LAW. *Vested rights.* A present vested right cannot exist in a thing which is not itself in existence.

FROM RUTHERFORD.

Appeal in error from the Circuit Court of Rutherford county. ROBERT CANTRELL, J.

W. H. WILLIAMSON and PALMER & RICHARDSON ·for Wm. Taylor.

C. A. SCHEAF for W. C. Taylor and Wife.

COOKE, Sp. J., delivered the opinion of the Court.

On April 29, 1878, Wm. Taylor, the plaintiff, was ·compelled to pay a judgment for which he had become liable as stayor for defendant in error, 'W. C. Taylor, and on November 17, 1879, said Wm. Taylor recovered judgment by motion against said 'W. C. Taylor, for the sum of $28.55, that being the amount of the judgment, interest and costs, so paid by him as stayor. Upon which judgment, execution was is-.sued and levied upon about thirty barrels of corn, as

the property of said W. C. Taylor.    This corn was replevied, in this suit, by Martha J. Taylor—the wife of W. C. Taylor—who is the real plaintiff in the suit, as belonging to her, and not subject to be taken in execution for this debt of the husband.

The corn in question was produced in the year 1879, upon the land which the said Martha J. owned the title in fee simple, by inheritance from her father, lately deceased.    Said W. C. and Martha J. Taylor were married about the year 1858 or 1859.

The case went by appeal to the circuit court, where a jury having been waived it was tried by the judge, who rendered judgment in favor of the defendants in error, and the plaintiff in error, Wm. Taylor, who was substituted as defendant below instead of the officer, has appealed to this court.

The only question for determination is, was the corn in question subject to levy and sale for the satisfaction of this debt of the husband?

By the act of 1849–50, ch. 36, sec. 1, "the interest of a husband in the real estate of his wife, acquired by her either before or after marriage, by gift, devise, descent, or in any other mode, sh ll not be sold, or disposed of by virtue of any judgment, decree, or execution against him.    *    *    *    Nor shall the husband sell his wife's real estate during her life without her joining in the conveyance in the manner prescribed by law, in which married women shall convey land:    Code, sec. 2481.

By the act of March 26, 1879, ch. 141, sec. 1, it was enacted, "That hereafter the rents and profits

Taylor *v.* Taylor.

of any estate or property of a married woman, which she now owns, or may hereafter become seized or possessed of either by purchase, devise, gift or inheritance, as a separate estate, or for years or for life, or as a fee simple estate, shall in no manner be subject to the debts or contracts of her husband, except by her consent obtained in writing; provided, that the act in no manner interferes with the husband's tenancy by the curtesy." All laws in conflict with this act were repealed by the second section, and it took effect from its passage: Acts 1879, p. 182.

The precise date of the descent last upon the wife to this land, is not definitely shown by the record, but it is said to be inherited from her late father, and it is conceded to have been since the passage of the act of 1849–50, above cited.

The debt upon which the judgment was rendered and execution issued, was created before the passage of the act of 1879, and the corn levied upon was raised upon the land after its passage.

It is insisted for the plaintiff in error, that the husband, W. C. Taylor, had such a vested right to the future rents and issues of the land, and consequently to the crop in question, although not in existence at the time of the passage of this act, as renders it inoperative and void as these rents and profits, as well as all subsequent issues and profits of the land, during the continuance of the coverture, and hence, the provisions of the act in question are in effect only an extension of the exemption laws in favor of the husband, and which, under all our de-

cisions, would be unconstitutional and void as to this debt, which was created before it, as impairing the obligation of contracts.

Upon the soundness or unsoundness of this proposition depends the determination of the case.     It is scarcely necessary to state, that by the common law, marriage conferred upon the husband the right to the wife's land during the coverture, and he could sell it or it could be taken in execution for his debts during that period, but the fee remained in the wife, and at the husband's death all right to the land so acquired from the husband terminated.

This· right, most clearly, was taken away by the act of 1849–50, and never attached to the land in question in this case, as the land descended to the wife after the passage of that act, even if it were conceded that the case would be different had it descended to her, and the husband and marital rights attached before the passage of this act.

In *Prater and Wife* v. *Hoover*, 1 Cold., 554, it was held ·that a deed of the husband, made in 1842, to the wife's reversionary interest in land, where the life estate fell in in 1854, was inoperative to convey any interest in the land.     Although the decision in that case was placed mainly upon the ground that there could be no tenancy by the curtesy of a remainder interest in land, unless the particular estate fall in during the coverture.     Yet, Judge Caruthers, delivering the opinion of the court, said:  " If the wife had died before the termination of the life estate, the husband's curtesy would have entirely failed.

It had no existence, then, until 1854, when the tenant for life died. But at that time the act of 1849, ch. 36, was in force, and provided that the husband should not sell his wife's real estate during her life without her joining in the conveyance in the manner prescribed by law, in which married women shall convey lands. *If he could not then sell it so as to affect her rights, without her* concurrence in the legal mode, how could his sale and conveyance, twelve years before, by relation, operate upon her right? This would seem to be absurd," etc.

So it will be seen that in this case, although the devise of the remainder interest in the land to the wife took effect in 1827, and the husband had undertaken to convey it by deed in 1842, and the act in question was passed in 1849, yet the court held that upon the falling in of the life estate in 1854, the husband had no power then to sell it; nor could the right then acquired relate to the execution of the deed so as to affect the right of the wife. It was also said in this case, that "the spirit and intention of the act of 1849 is, that wives shall not be deprived of the enjoyment of their real estate by any act of their husband, or by his creditors even, without their solemn and free concurrence in the single mode prescribed by law."

And in *Corley* v. *Corley,* 8 Baxt., 8, it was said by Chief Justice Nicholson, that "under the act of 1849, as construed in *Prater* v. *Hoover*, wives cannot be deprived of the enjoyment of their real estate by any act of their husbands without their free concur-

rence." And in *Coleman* v. *Satterfield*, 2 Head, 264, Judge McKinney said: "By this act the common law is materially changed. It not only protects the husband's interest in the lands of the wife from seizure and sale by his creditors during her life, but it likewise disables the husband, by his own act, to sell or dispose of such interest during the wife's lifetime without her joining in the conveyance."

It will be noticed that in none of the cases cited, in which the act of 1849 has been construed, is there any question made as to the power of the Legislature to pass it, on account of any vested marital right of the husband in the lands of the wife. But in *Lucas* v. *Richerick*, it was said "that while the act in question changed the common law by forbidding the sale of the husband's interest during the life of the wife, for his debts, and also disables him from selling such interest unless she joins in the conveyance, that this was the only effect of the statute, and that it did not create a technical separate estate in the wife, and that the rights of the husband as to the rents and profits are not affected by the statute, and remain as before its passage": 1 Lea, 728.

There can be no question but that this descision caused the passage by the Legislature of the act of 1879 above cited.

This case of *Lucas* v. *Richerick*, was a proceeding to subject rents to the wife's land which had already accrued, and. were then due and in arrears, to the satisfaction of the debt of the husband. But the question of any vested right in the husband, to the

*future* productions of the land of the wife, even under the law as it then existed, was not thought of nor considered.

We have thus reviewed at some length the principal cases in which the act of 1849 has been construed, as furnishing a light in which the act of 1879 is also to be construed. What then was the nature and extent of the interest which the husband, W. C. Taylor, had in 1878 to the rents or issues that might accrue from the land of his wife in 1879? He certainly had the same interest in rents that might or may accrue in any or all the years of their joint lives, as he had in that which might accrue in 1879. That which mainly gives value to real estate is the rents, profits or issues that accrue from it, and to say that he has no right to dispose of the lands themselves, but may dispose of the rents and profits during the term of their joint lives, it seems to me, would be virtually to nullify the statute.

We are unable to see how a present vested right can exist to a thing which is not itself in existence. Admitting that by the law as it stood before the passage of the act of 1879 the husband had the right to receive the rents of the wife's land as they accrued, that right so far as related to future products was a mere possibility or expectancy which might or might not even accrue. If the wife had died after the passage of the act, and before the production of the crop of 1879, having had no issue, where would have been the right of the husband to the crop? It can not be pretended that he would have

had any possible interest in it. And this is the same, principle decided in case of *Prater* v. *Hoover*, above referred to. In that case it was held that the marital right of the husband could not attach to the remainder pending the life estate, because it was a mere expectancy, and could not attach or relate when the life estate fell in, because of the interposition of the statute of 1849, and although the husband would have been entitled to the land at the termination of the life estate, during their joint lives, and might have sold it, yet the statute passed during the coverture, and before the event happened, took the right away from him. And here the same reason precisely applies. The husband or his creditors would have been entitled to appropriate the rents of the land when produced, but before that event happened the statute was passed, and took the right which otherwise might have accrued away. The right of the husband to the future rents and profits of the wife's land before the act of 1879, if any thing at all, was a mere inchoate right, existing by law, which might be defeated by the happening of natural events, such as that above specified of the death of the wife without having had issue, or by the sale of the land, or the settlement of it upon her to her sole and separate use by the tribunals of the country. But the law, as stated by Mr. Bishop, is, that inchoate rights, depending for their original existence upon the law itself, may be abridged or modified by law at the pleasure of the Legislature: 2 Bish. on Married Women, sec. 32, citing 12 Wisconsin, 371; 1 Hill,

(N. Y.), 324; see also 4 Tex., 470; 1 Carter, (Ind.), 56; 3 Foster, (N. H.), 376; 4 Ib., 344; 22 Pick., 430. Moreover, if the husband had the vested right before the passage of the act of 1879, to the future rents and profits of the wife's land during the coverture, he certainly, as a necessary consequence, would have the right to lease or rent them out during that time, and surrender the possession to the lessee or tenant without her concurrence. This would be but another mode of selling and disposing of the land during their joint lives, and thus to deprive the wife of the enjoyment of the same. But in the case of *Corley* v. *Corley, supra,* and also in *Prater* v. *Hoover,* it was expressly decided that under the statute of 1849, wives cannot be deprived of the enjoyment of their real estate by any act of their husbands without their concurrence. We are, therefore, of opinion that these statutes were enacted for the benefit of married women, and not for that of their husbands. That the husband in this case had no vested right to the future products of the wife's land at the time of the passage of the act of 1879, which rendered the statute inoperative to protect the same against the creditors of the husband. That the effect of said statute was not to create an exemption in favor of the husband, but was to protect the property of the wife. That the corn in question was not subject to levy and sale under the judgment and execution in this cause. That the action of replevin for the benefit of the wife was well brought.

The Referees, in a very able and elaborate report,

prepared by Commisioner Caldwell, came to a different conclusion, and recommended a reversal of the judgment of the circuit court.

The exceptions to the report will therefore be sustained, the report set aside and the judgment of the court below affirmed.

This also disposes of the case of Leland Jordan, executor, against C. B. Harrison and others, involving the same question, and renders it unnecessary to determine the other questions raised by the record in that case. The exceptions to the report of the Referees in that case will be sustained, the report set aside and the judgment of the circuit court affirmed.

Judges FREEMAN and COOPER dissent.